## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE M. CAMPBELL, and KIM L. :      No. 4:16-CV-00779
CAMPBELL, husband and wife,    :
                               :
           Plaintiffs,         :       (Judge Brann)
                               :
       v.                     :
                               :
CHARLES BALON, individually as : 
police officer of the Bloomsburg   :
Police Department; OFFICER    :
AUCHTER, individually as police : 
Officer of Bloomsburg Police    :
Department; OFFICER SZKODNY, :
Individually as police officer of the :
Bloomsburg Police Department;   :
ROGER VANLOAN, individually as :
Police chief of the Bloomsburg Police :
Department; TOWN OF       :
BLOOMSBURG; CHUMLEY'S    :
BAR AND GRILLE, LLC, and    :
CAPITOL BG LLC, d/b/a CAPITOL :
BAR AND GRILL a/k/a CAPITOL   :
RESTAURANT AND BAR; JOHN   :
BERGER, III, MARLENE      :
BUTTERS; and JOHN GREGAS,   :
                               :
           Defendants.       :

## MEMORANDUM OPINION

### JULY 6, 2017

Plaintiffs Bruce M. Campbell and Kim L. Campbell were patrons of

Defendant Capitol Bar and Grill on May 9, 2014. The following day—May 10,

2014—Plaintiffs' daughter was scheduled to graduate from Bloomsburg

University.  Ostensibly a celebration of their daughter's impending graduation, this patronage took an unforeseen turn that night with the ordering of a Glenlivet–neat, and ultimately resulted in the arrest, imprisonment, and prosecution of Bruce Campbell.  Plaintiffs now seek damages related to this turn of events from various involved Defendants, and aver, within their fifty-two (52) page complaint, twenty causes of action with that aim.

Currently before the Court for disposition are the following Motions to Dismiss filed by Defendants to this action:

1. Defendants Charles Balon, Officer Auchter, Officer Szkodny, Roger F. VanLoan, and Town of Bloomsburg's ("Bloomsburg Defendants") Motion to Dismiss the Amended Complaint;

2. Defendant John Berger, III's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6);

3. Defendant Marlene Butters's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6);

4. Defendant Jason Gregas's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6); and

5. Defendant Chumley's Bar and Grille's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).

In accordance with the foregoing reasoning, the above Motions will be granted in part and denied in part, with limited leave to amend as detailed more fully bellow.

## I.    BACKGROUND

The facts presented in Plaintiffs' Complaint, taken as true and with all inferences construed in the light most favorable, relay the following unusual tale.

On May 9, 2014 at approximately 10:30 p.m., Plaintiffs Bruce M. Campbell ("Plaintiff BC") and Kim L. Campbell ("Plaintiff KC") (collectively "Plaintiffs") were enjoying drinks at Defendant Chumley's Bar and Grill a/k/a Capitol BG, LLC d/b/a Capitol Bar and Grill a/k/a Capitol Restaurant and Bar ("Defendant Chumley").[1] In Bloomsburg, Pennsylvania for the celebration of their daughter's college graduation, Plaintiffs were accompanied by their daughter Nicole, her boyfriend Sean, and son Cory.[2] Plaintiff BC ordered a Glenlivet–neat, and, after determining that the drink was "watered down," stated as such to the bartender on duty and placed the glass on the bar.[3] To confirm his suspicion, Plaintiff BC drank from the glass again a few minutes later and this time placed it on the edge of the bar.[4] Plaintiff BC was thereafter refused service by the bartender, forcing his

---

[1]    Compl. (ECF No. 26) ¶ 14, at 4.

[2]    *Id.* ¶¶ 14-15.

[3]    *Id.* ¶ 17.

[4]    *Id.* ¶ 18.

daughter to order more drinks for the group.[5]  When Plaintiff BC was subsequently

presented with a bill including charges for the Glenlivet–neat, he paid the bill in

full without a gratuity.[6]

Following his payment of the bill, Plaintiff BC was approached by

Defendant James Berger, III ("Defendant Berger")—part owner of Defendant

Capitol—who requested that he join him across the room.[7]  Once across the room

with Plaintiff BC, Defendant Berger, unidentified by nametag or verbal

communication, grabbed Plaintiff BC's elbow and yelled "who the f--k do you

think you are?"[8]  Believing Defendant Berger to be just an intoxicated patron,

Plaintiff BC avoided confrontation and simply walked away.[9]  Defendant Berger

returned—this time accompanied by two men.  Defendant Berger again tapped

Plaintiff BC on the shoulder to direct him to the other side of the room.[10]  Plaintiff

BC, however, ignored this physical cue.[11]

---

[5]    *Id.* ¶ 19, at 5.

[6]    Compl. (ECF No. 26) ¶ 20.

[7]    *Id.* ¶ 21.

[8]    *Id.* ¶ 22.

[9]    *Id.* ¶ 23.

[10]   *Id.* ¶ 24.

[11]   Compl. (ECF No. 26) ¶ 25.

The third time Defendant Berger approached Plaintiff BC brought greater force as he grabbed Plaintiff BC's shirt and yanked him off balance.[12] This action caused Plaintiff BC's drink to splash on Plaintiff KC and Defendant Berger.[13] After Defendant Berger tightened his hold on Plaintiff BC's shirt with both hands, Plaintiff BC reciprocated by grabbing Defendant Berger's shirt to push him away.[14] Three employees of the bar then joined in attacking and choking Plaintiff BC.[15] Following an indication to her children that their father was being attacked, Plaintiff KC and her two children came to Plaintiff BC's defense by trying to pull the men off of him.[16] During this melee, Defendant Berger and the other men involved did not identify themselves as employees of Defendant Chumley.[17]

During this upright altercation with Defendant Berger and other employees of the bar, Plaintiff BC did not strike these men or relinquish full control of his beer glass.[18] However, Plaintiff BC, along with Defendant Berger, was eventually slammed to the floor by a Defendant Chumley employee.[19] These two men were joined on the floor in this skirmish by a growing knot of other Defendant Chumley

---

[12] *Id.* ¶ 27.

[13] *Id.*

[14] *Id.* ¶¶ 28–29, at 6.

[15] *Id.* ¶ 30.

[16] Compl. (ECF No. 26) ¶¶ 31–33.

[17] *Id.* ¶ 35.

[18] *Id.* ¶¶ 36–37.

[19] *Id.* ¶ 38.

employees, including a bartender who leaped onto the men from atop a bar stool.[20] Shortly after landing on the floor of the bar, Plaintiff was pulled off the floor by a Defendant Capitol employee and escorted outside.[21] As a result of this skirmish, Plaintiff BC asserts the following injuries: (1) a bloody nose, (2) nerve damage to his neck running down his left arm, (3) a black eye, (4) a bruised thigh, (5) anxiety, and (6) sleep disturbances.[22] Plaintiff KC, in turn, asserts that she suffered emotional distress as a result of witnessing this altercation involving both her husband and son.[23]

Outside the bar, Plaintiff BC began walking in the opposite direction from his son in an attempt to locate Plaintiff KC and their daughter.[24] At this moment, Plaintiff BC heard a police officer of the Bloomsburg Police Department believed to be either Defendant Officer Auchter or Defendant Officer Szkodny shout behind him.[25] Plaintiff BC turned around to see a police officer with his handgun drawn and aimed directly at his person.[26] At the time, Plaintiff BC was wearing a shirt

---

[20]  *Id.* ¶ 39, at 7.

[21]  Compl. (ECF No. 26) ¶ 42.

[22]  *Id.* ¶ 40.

[23]  *Id.* ¶ 41.

[24]  *Id.* ¶ 43.

[25]  *Id.* ¶¶ 43–44.

[26]  Compl. (ECF No. 26) ¶ 45.

and slacks and his hands were free.[27]  He was nevertheless ordered to the ground and handcuffed with his hands behind his back.[28]  He was thereafter transported to Bloomsburg Police Department Station by either Defendant Auchter or Defendant Szkodny.[29]

At the barracks, Plaintiff BC was confined in a room by himself with his hands cuffed behind his back and his legs shackled to the floor.[30]  Due to his "great discomfort" in this position during his two hour confinement, Plaintiff BC requested that Defendant Charles Balon ("Defendant Balon") loosen his handcuffs.[31]  Defendant Balon refused this request after placing a finger on Plaintiff BC's palm and commenting "they are not tight."[32]  Defendant Balon further admonished Plaintiff BC to "stop being a baby" and "stop crying."[33] Defendant Balon also declined to move Plaintiff BC to a different room to accommodate a request before speaking, and repeatedly told him that he was "going to jail."[34]  Defendant Balon later relayed that he had viewed the videotape

---

[27] *Id.*

[28] *Id.* ¶ 46, at 8.

[29] *Id.* ¶ 47.

[30] *Id.* ¶ 47.

[31] Compl. (ECF No. 26) ¶ 48.

[32] *Id.*

[33] *Id.*

[34] *Id.* ¶ 49.

from the earlier altercation and repeated that Plaintiff BC was "going to jail."[35]

Plaintiff BC responded by asserting his innocence.[36]

In the early morning hours of May 10, 2014, Plaintiff BC was transported to Columbia County Prison where he was temporarily incarcerated.[37] At 9:00 a.m. on May 10, 2014, Plaintiff BC was arraigned and informed that he was being charged with Simple Assault and harassment with bail set at $ 20,000.00.[38] Plaintiff posted bail later that morning.[39] On May 13, 2014, additional charges of felony Aggravated Assault and misdemeanor or summary Disorderly Conduct were entered against Plaintiff BC.[40] Attached to the Criminal Complaint was an Affidavit of Probable Cause completed and verified as truthful by Defendant Balon.[41] In this Affidavit, Defendant Balon asserts (1) that he and Defendant Szkodny had met with the co-owner of Defendant Chumley, Defendant Marlene Butters, together with Defendant Gregas;[42] (2) that he also has met with Defendant Berger who had a large laceration on his forehead from the incident;[43] and (3) that

---

[35] *Id.* ¶ 50.

[36] Compl. (ECF No. 26) ¶ 51.

[37] *Id.* ¶ 52, at 8–9.

[38] *Id.*

[39] *Id.* ¶ 53.

[40] *Id.* ¶ 54, at 9.

[41] Compl. (ECF No. 26) ¶ 56.

[42] *Id.* ¶ 57.

[43] *Id.* ¶ 58, at 10.

he and Defendants Szkodny, Butters, and Gregas jointly reviewed a shortened video of the incident, agreed what happened, and what criminal action would be taken.[44] Plaintiff BC, however asserts that this Affidavit is a "monumental fabrication and falsification" not supported by a full video of the incident, and includes, within the Complaint, ten alleged discrepancies or falsifications.[45] These alleged discrepancies contradicted by video include, among other things, representations that (1) Plaintiff BC threw his drink in Defendant Berger's face; (2) Plaintiff BC smashed his beer glass on Berger's forehead; and (3) Plaintiff BC's actions in some way initiated the altercation.[46]

From the date Plaintiff BC was additionally charged to the date his case was finally tried to verdict on September 25, 2015, Plaintiff BC suffered fear, embarrassment, and physical distress caused by both the physical injuries stemming from the arrest and anxiety of facing trial.[47] Plaintiff KC avers a similar emotional impact resulting from the events in question. Specifically, in May 2015, Plaintiff KC attempted suicide and was hospitalized for eight (8) days due to her observation of the physical skirmish and the contemplation of her husband's

---

[44] *Id.* ¶ 60.

[45] *Id.* ¶¶ 63–64, at 10–12.

[46] *Id.*

[47] Compl. (ECF No. 26) ¶ 67, at 13.

rapidly approaching trial date.[48]  On September 25, 2015, Plaintiff BC stood trial in the Court of Common Pleas of Columbia County on the aforementioned criminal charges.[49]  At the close of the prosecution's case, Plaintiff BC's counsel made an unopposed motion to dismiss the felony aggravated assault charge, and the motion was granted.[50]  Plaintiff BC was subsequently acquitted of both the additional misdemeanor offenses of simple assault and disorderly conduct, and the summary offense of harassment.[51]

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[52]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[53] This is true of any claim, "without regard to whether it is based on an outlandish

---

[48] *Id.* ¶¶ 71–73.

[49] *Id.* ¶ 75, at 14.

[50] *Id.* ¶ 77.

[51] *Id.* ¶ 78.

[52] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[53] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

legal theory or on a close but ultimately unavailing one."[54]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[55] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[56] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[57]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[58] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[59] "Although the

---

[54] *Neitzke*, 490 U.S. at 327.

[55] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[56] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

[57] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[58] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[59] *Iqbal*, 556 U.S. at 678.

plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[60] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[61]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[62] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[63]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[64] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[65] "After *Iqbal*, it is clear that conclusory or 'bare-bones'

---

[60] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[61] *Twombly*, 550 U.S. at 556.

[62] *Iqbal*, 556 U.S. at 679.

[63] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[64] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[65] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

allegations will no longer survive a motion to dismiss."[66] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[67]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[68]

## III.   ANALYSIS

Plaintiffs BC and KC allege a plethora of federal claims brought pursuant to 42 U.S.C. § 1983 and state law claims against both the Bloomsburg Defendants and Defendants Berger, Butters, Gregas, and Chumley (collectively "Capitol Defendants").  For ease of understanding, my analysis of the plausibility of each claim pursuant to *Twombly/Iqbal* will proceed according to defendant group.

### A.   Bloomsburg Defendants' Motion to Dismiss

#### 1.   Section 1983

---

[66]  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[67]  *Iqbal*, 556 U.S. at 678.

[68]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

Section 1983 provides a cause of action to redress violations of federal law committed by state officials.[69]  Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights.[70]  To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.[71]  Here, Plaintiffs BC and KC bring their Section 1983 claims for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution.

> (a)  Counts I–III: Bruce Campbell's Section 1983 Claims for Malicious Prosecution, False Arrest, and False Imprisonment against Defendant Charles Balon[72]

In Counts I through III, Plaintiff BC alleges claims for (1) malicious prosecution, (2) false arrest, and (3) false imprisonment against Defendant Balon pursuant to Section 1983.  In his Motion to Dismiss, Defendant Balon argues that

---

[69]  *See* 42 U.S.C. § 1983.

[70]  *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 815 (1985).

[71]  *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

[72]  To the extent Plaintiff BC is asserting a substantive due process Fourteenth Amendment claim for malicious prosecution, false arrest, and false imprisonment claims, those claims are subsumed by his Fourth Amendment claims and dismissed. *See Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000)("The Supreme Court has held that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate. Although not all actions by police officers are governed by the Fourth Amendment, (citation omitted) the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis.").

said claims should be dismissed because probable cause was present at the time of arrest and affirmed throughout Plaintiff BC's continued prosecution. Even if such probable cause was lacking, Defendant Balon argues that he is nevertheless entitled to qualified immunity for any resulting constitutional violation. Having reviewed Plaintiff BC's claims, I am of the opinion that, while Defendant Balon's arguments concerning probable cause and qualified immunity may eventually be vindicated, disposition of that issue at this early stage of litigation would be premature.

Plaintiff BC's malicious prosecution, false arrest, and false imprisonment claims all rest on the lack of probable cause—an element essential to all three.[73] "[P]robable cause to arrest exists when the facts and circumstance within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."[74] As such, there can be no liability on the part of the arresting officer unless "no reasonably competent officer" would conclude that probable cause

---

[73] *See Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)(stating that "initiation of the proceeding without probable cause is an essential element of a malicious prosecution claim); *Dowling v. Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)("The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.").

[74] *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

existed.[75]  Courts should make their probable cause determination on the "totality of the circumstances ... [which means] that a court should not isolate pieces of evidence when it determines whether there was probable cause for a prosecution."[76]  Though the existence of probable cause is customarily an issue of fact to be determined by a jury, a court can conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to the plaintiff, would not reasonably support a contrary factual finding.[77]

In the instant matter, Plaintiff BC alleges that probable cause to arrest, imprison, and prosecute him for the alleged assault was lacking under the totality of the circumstances.[78]  Defendant Balon, in turn, argues that probable cause existed as a matter of law based on both (1) the facts as alleged and accepted within Plaintiffs' Complaint, and (2) Plaintiff BC's subsequent prosecution in which the issue of probable cause was raised repeatedly.[79]  First, while Defendant Balon argues that factual allegations of Plaintiff BC's Complaint are themselves sufficient to establish probable cause, I note that Plaintiff BC vigorously contests many findings within the supporting "Affidavit of Probable Cause."  In *Wilson v.*

---

[75]   *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[76]   *Halsey v. Pfeiffer*, 750 F.3d 273, 301–02 (3d Cir.2014).

[77]   *See Sherwood*, 113 F.3d at 401 (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)).

[78]   ECF No. 32, at 2–5.

[79]   ECF No. 31, at 3–9.

*Russo*, the Honorable Edward R. Becker writing for the Third Circuit stated that a plaintiff may succeed in a Section 1983 action for false arrest if the plaintiff shows: "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' "[80] Here, Plaintiff BC appears to proceed under this theory of liability by arguing the "Affidavit of Probable Cause" contains numerous falsehoods and/or omissions which could negate the existence of probable cause. A full development of the factual record will therefore be necessary to properly vet this argument, and otherwise determine whether the application of qualified immunity is appropriate.[81]

Second, Defendant Balon argues that Plaintiff BC's criminal prosecution in which the existence of probable cause was raised repeatedly precludes this issue from again being litigated. While the probable cause determinations made during Plaintiff BC's prior criminal prosecution are "weighty evidence" tending to indicate the presence of probable cause in a subsequently filed civil suit, they are

---

[80] *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)(quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).

[81] *See also Toribio v. Spece*, Civil Action No. 10-CV-2441, 2011 WL 6027000, at *3 (M.D.Pa. Dec. 5, 2011)(Munley, J.)(denying a motion to dismiss where plaintiff asserted that defendant provided inaccurate or incomplete information in the affidavit of probable cause).

not wholly dispositive.[82]  By raising this issue in his Motion to Dismiss, Defendant

Balon specifically draws into question whether Plaintiff BC's claims involving

probable cause are subject to the doctrine of issue preclusion, or collateral

estoppel.[83]  The doctrine of collateral estoppel requires that the following elements

be met:

> (1) the issue decided in the prior adjudication was identical to the one
> presented in the later action; (2) there was a final judgment on the
> merits; (3) the party against whom the plea is asserted was a party or
> in privity with a party to the prior adjudication; and (4) the party
> against whom it is asserted had a full and fair opportunity to litigate
> the issue in question in a prior action.[84]

Defendant's argument concerning probable cause fails the fourth requirement of

this analysis.  In *James v. Heritage Valley Federal Credit Union,* the Third Circuit

recognized that "the ability to appeal an adverse ruling is indispensable to a finding

that there existed a full opportunity to litigate the issue."[85]  Therefore, because

Plaintiff BC's acquittal prevented him from appealing pretrial determinations, he is

not collaterally estopped from arguing a lack of probable cause in the instant civil

matter.[86]

---

[82]  *Zimmerman v. Corbett*, Civil Action No. 13-CV-2788, 2015 WL 539783, at *5 (M.D.Pa. Feb. 10, 2015)(Kane, J.).

[83]  ECF No. 31, at 4.

[84]  *Walker v. Horn*, 385 F.3d 321, 337 (3d Cir. 2004).

[85]  197 F.App'x. 102, 106 (3d Cir. 2006)(citing *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991)).

[86]  *Kline v. Hall*, Civil Action No. 12-CV-1727, 2013 WL 1775061, at * 4 (M.D.Pa. Apr. 25, 2013)(Caldwell, J.).

Defendant Balon's Motion to Dismiss will therefore be denied with regard to Counts I through III.

      (b)    <u>Count IV: Bruce Campbell's Section 1983 Claim for Excessive Use of Force Against Defendant Charles Balon</u>

The Fourth Amendment governs a claim that law enforcement officers used excessive force in the course of making an arrest.[87]  To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show: (1) that a seizure occurred; and (2) that the use of force was objectively unreasonable.[88]  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.' "[89]  The reasonableness standard, in turn, "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[90]

Here, Plaintiff BC's excessive use of force claim against Defendant Balon is based on injuries he suffered as the result of excessively tight handcuffs employed

---

[87] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[88] *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

[89] *Graham*, 490 U.S. at 395 n. 10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968))

[90] *Graham,* 490 U.S. at 396.

during his imprisonment. In *Kopec v. Tate*, the Third Circuit determined that the alleged tightness of the plaintiff's handcuffs, if credited by a jury, could establish an excessive use of force claim under the Fourth Amendment.[91] The *Kopec* Court reached this conclusion because the plaintiff had repeatedly complained of extreme pain to the arresting officer, fell to the ground, began to faint, and alleged permanent nerve damage in one wrist.[92] The Third Circuit, however, cautioned that its holding "should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims," and emphasized the "rather benign circumstances that hardly justified [the officer's] failure to respond more promptly to Kopec's entreaties, at least to the extent to ascertain if the handcuffs were too tight."[93] In fact, in an opposite holding rendered a year later, the Third Circuit in *Gilles v. Davis* affirmed the issuance of summary judgment in favor of defendants where plaintiff's complaint concerning the tightness of the handcuffs was unaccompanied by "obvious visible indicators of Gilles' pain" and "medical treatment after the fact."[94]

The Third Circuit has held that "[t]he reasonableness of the use of force is normally an issue for the jury" upon consideration of "all of the relevant facts and

---

[91] 361 F.3d 772, 777 (3d Cir. 2004).

[92] *Id.* at 774.

[93] *Id.*

[94] 427 F.3d 197, 208 (3d Cir. 2005).

circumstances leading up to the time that the officers allegedly used excessive force."[95]  Here, such a factual development has not yet occurred, and the Court is instead tasked with determining the *plausibility* of Plaintiff BC's claim for relief.  I find that Plaintiff has failed that test.  In *Shumate v. Maturo*, the Honorable C. Darnell Jones, II of the Eastern District of Pennsylvania dismissed a plaintiff's claim for excessive use of force based on the use of handcuffs where the sole allegations were that (1) the plaintiff told the troopers he was in "extreme pain" and requested that they loosen them, (2) the troopers twice ignored this request, and (3) the plaintiff thereafter did not seek treated for at least seven months.[96] Judge Jones specifically held that plaintiffs had "failed to sufficiently demonstrate that Defendants Maturo and Voetelink's actions were not "objectively reasonable" in light of the facts and circumstances confronting them."[97]  Judge Jones reasoned that:

> Unlike the situation in *Kopec,* Plaintiff herein did not begin to faint or fall to the ground from pain. He didn't tell the troopers he was losing feeling in his hand. He did not moan from excruciating pain. Moreover, when Mr. Shumante after being transported to the hospital to have his blood drawn shortly after his arrest, he never told anyone at the hospital he was in any discomfort despite the "extreme pain" he was allegedly suffering from. (citation omitted). He similarly does not claim that he told anyone at the PSP Media Barracks that he was in

---

[95]  *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

[96]  Civil Action No. 13-CV-6610, 2014 WL 5286312, at *4–5 (E.D.Pa. Oct. 15, 2014).

[97]  *Id.*

any discomfort after being taken there for processing. (citation omitted).[98]

Viewing the allegations of the complaint in the light most favorable, I find that Plaintiff BC has relayed less severe treatment than that presented in *Shumate*. First, unlike in *Shumate* where the plaintiff twice complained of "extreme pain" to no avail, Plaintiff BC's complaints related strictly to discomfort and numbness. These complaints were addressed by Defendant Balon when he checked the tightness of the cuffs. Second, unlike in *Shumate* where the plaintiff alleged belated treatment from injuries resulting from the placement of handcuffs, Plaintiff BC's complaint makes no such allegation concerning treatment. Rather, it is instead limited to the conclusory allegation of "pain and suffering for several months after his incarceration."[99] Significantly less egregious than the allegations addressed in *Shumate*, I find that Plaintiff here has failed make *plausible* that further discovery will place Defendant Balon's actions at the *Kopec* end of the *Kopec-Gilles* continuum of objective reasonableness in the context of handcuff use. However, to the extent he can allege both unanswered complaints of pain relayed to Defendant Balon and subsequent medical treatment complying with the above detailed precedent, Plaintiff BC is granted leave to amend this claim.

---

[98] *Id.* at 4.

[99] *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.").

Defendant Balon's Motion to Dismiss will be granted with regard to Count IV.

        (c)      <u>Count V: Bruce Campbell's Section 1983 Claim for Excessive Use of Force Against Officer Auchter or Officer Szkodny</u>

Defendant Officers Auchter and Szkodny next move for the dismissal of Plaintiff BC's claim for excessive use of force against them. In this claim, Plaintiff BC argues that, after being ejected from Defendant Capitol Bar, he was subject to excessive force when either Officer Auchter or Officer Szkodny yelled for him to get on the ground and pointed his gun at him. Plaintiff BC alleges that said use of force was without justification as (1) he gave no indication that he was armed, (2) he was walking away from the officer at the time of this force, and (3) the impetus for this arrest (the alleged assault within Defendant Capitol Bar) did not involve a deadly weapon. Defendant Officers Auchter or Szkodny in turn respond that this use of force was "objectively reasonable" given, *inter alia*, the officer's search for a suspect in a violent multi-person bar fight, the quickness of the interaction, the uncertain level of aggressiveness which Plaintiff BC would show, and his status as a lone officer during this incident.

As noted above, the reasonableness standard employed within an excessive use of force inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[100] In making this determination, the Supreme Court has cautioned that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is constitutionally unreasonable.[101] Instead, the Supreme Court has explained that "[t]he calculus of reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[102]

Viewing the allegations in the light most favorable to the Plaintiff, as is required at this preliminary stage of litigation, I find that Plaintiff BC has alleged a *plausible* claim of excessive use of force. In *Baker v. Monroe Township*, the Third Circuit wrote that, while "[t]here is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest," their use "must be justified by the circumstances."[103] In that case, plaintiffs were detained by police officers as they arrived outside an apartment immediately prior to the commencement of a drug

---

[100] *Graham,* 490 U.S. at 396.

[101] *Id.* at 396.

[102] *Id.* at 396–97.

[103] *Baker v. Monroe Tp.*, 50 F.3d 1186, 1193 (3d Cir. 1995).

raid at that address.[104]  As the police rushed into the residence, the three plaintiffs, two of whom were teenagers, were pushed to the ground at gunpoint, and forced to remain there for at least fifteen minutes.[105]  In reversing the issuance of summary judgment in favor of defendants, the Court in *Baker* held that:

> Considering the facts in the light most favorable to the Bakers, the appearances were those of a family paying a social visit, and while it may have been a visit to a wayward son, there is simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used.[106]

The Court continued that, in making this determination, a court "must look at the intrusiveness of all aspects of the incident in the aggregate."[107]

In support of his claim for excessive use of force, Plaintiff BC alleges (1) he gave no indication that he was armed, (2) the impetus for this arrest (the assault within the bar) did not involve a deadly weapon, and (3) he was forced to the ground at gunpoint and put in fear for his life.  While Defendants nevertheless aver that said use of such force was justified because "Mr. Campbell viciously assaulted another man, fled the scene, and was arrested in a darkened area,"[108] this recitation of events stands in stark contrast to that asserted by Plaintiff BC, and is thus nowhere included within the complaint.  Also absent from the allegations of the

---

[104]  *Id.*

[105]  *Id.*

[106]  *Id.* at 1194.

[107]  *Id.*

[108]  ECF No. 39, at 7.

complaint are any facts establishing what knowledge Defendant Officers Auchter or Szkodny had of the prior incident when effectuating this arrest. Therefore, because it is "well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record,"[109] I will deny the motion to dismiss this claim.

In the event Plaintiff BC were to establish a plausible constitutional violation based on excessive use of force, Defendant Officers Auchter or Szkodny ask that the Court nevertheless hold that they are entitled to qualified immunity. The purpose of qualified immunity is to protect government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[110] In *Mullenix v. Luna*, the Supreme Court of the United States emphasized the wide breath of qualified immunity's protection.[111] The *Mullenix* Court specifically stated that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[112] Furthermore, qualified immunity is intended

---

[109] *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

[110] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[111] *Mullenix v. Luna*, 136 S.Ct. 305, 306 (2015).

[112] *Id.*

to be immunity from suit, rather than simply a defense to liability.[113] This means that its protection is effectively lost if a defendant is required to go to trial.[114]

Courts employ a two-part test to determine whether a defendant is entitled to the protections of qualified immunity. First, the court must consider whether the facts that the plaintiff has demonstrated make out a violation of a constitutional right.[115] If the plaintiff has satisfied that inquiry, the court must next decide whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.[116] The Supreme Court has stressed that there is no mandatory order in which to consider the two prongs of this qualified immunity analysis.[117]

In determining whether a constitutional right was clearly established, a broad and generalized declaration that a clearly established federal right was violated is insufficient.[118] Rather, in order for a constitutional right to be 'clearly established,'

---

113 *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).

114 *Id.*

115 *See id.*, 533 U.S. at 201.

116 *See id.*

117 *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

118 *See Anderson v. Creighton*, 483 U.S. 632, 640 (1987) (holding that the mere assertion that the Fourth Amendment prohibits warrantless searches without probable cause and exigent circumstances was not enough to demonstrate that the right was clearly established).

"[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right."[119]  Put another way, for the purposes of the qualified immunity analysis, a right is considered clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[120]

Here, a determination of qualified immunity would be premature.  In the recently decided case of *Anthony v. Seltzer*,[121] the Third Circuit affirmed a district court's denial of qualified immunity at the motion to dismiss stage.[122]  The court in *Seltzer* reasoned that, because appellant's request for qualified immunity rested on a fact not included within the amended complaint, adoption would "require drawing an impermissible adverse inference against Anthony at the pleading stage."[123]  Defendants here ask for a similar impermissible inference, i.e. that the Court find qualified immunity because their use for force was reasonable given Plaintiff BC instigating a violent attack with his beverage glass.  Because resolution of this factual dispute necessarily relies upon the completion of factual

---

[119]  *Id.* at 640–41.

[120]  *Saucier*, 533 U.S. at 202.

[121]  While Third Circuit Internal Operating Procedure 5.7 instructs that non-precedential "opinions are not regarded as precedents that bind the [Third Circuit] because they do not circulate to the full court before filing," I nevertheless include this citation for its persuasive reasoning.

[122]  — F.Appx. — , 2017 WL 2569705, at *3 (3d Cir. 2017).

[123]  *Id.*

discovery, I will deny Defendant's request at this junction with leave to renew following discovery.

Defendant Officers Auchter and Szkodny's Motion to Dismiss Count V is therefore denied.

> (d) <u>Counts VI-VII: Bruce Campbell's Section 1983 Claims Against Police Chief Roger VanLoan and the Town of Bloomsburg</u>

In counts VI and VII, Plaintiff BC alleges Section 1983 claims against both Police Chief Roger VanLoan and the Town of Bloomsburg. Liability against a defendant in a civil rights action cannot be premised on a theory of *respondeat superior*, or mere hypotheses that an individual defendant may have had knowledge of or personal involvement.[124]  Rather, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence."[125]  Absent from the Amended Complaint are any facts alleging personal involvement by Defendant Roger VanLoan. Indeed, Plaintiff BC concedes this absence, and instead appears to allege that the immense falsifications within the "Affidavit of Probable Cause" establish liability based on a failure by both VanLoan and the Town of Bloomsburg to train its officers.

---

[124] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode  v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003).

[125] *Atkinson*, 316 F.3d at  271.

In *Monell v. Department of Social Services of City of New York,* the Supreme Court of the United States determined that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[126] In order to establish municipality liability under Section 1983, a plaintiff must establish that the municipality had a policy or custom that caused his constitutional injury.[127] Finally, in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights.[128]

A municipality or municipal official may be held liable for constitutional violations that result from inadequate training of its employees if the failure to train constitutes a custom of the municipality.[129] Establishing municipal liability on a failure to train claim under Section 1983, however, is difficult,[130] and requires that the "failure amounts to 'deliberate indifference ... [of the constitutional] rights of persons . . . ' "[131] A showing of deliberate indifference requires that "(1)

---

[126] 436 U.S. 658, 694 (1978).

[127] *Id.* at 694–95.

[128] *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).

[129] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[130] *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

[131] *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005)(citations omitted).

municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[132]  To establish deliberate indifference, it is "ordinarily necessary" for plaintiff to show a "pattern of similar constitutional violations by untrained employees."[133]

Here, Plaintiff's Complaint fails to allege such a pattern of violations.[134] Rather, Plaintiff BC alleges that "[t]he 'Affidavit of Probable Cause' prepared by Defendant Balon is so fraught with false statements and contradicted by the surveillance tape that a factfinder can find that [he] had never been trained by the Chief and the Town."[135]  Recovery for Plaintiff, however, is not foreclosed as the Supreme Court has indicated that a single incident may evince deliberate indifference when "the need to train officers . . . can be said to be so obvious" in itself and the lack thereof would predictably lead to recurrent rights

---

[132]  *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

[133]  *Connick*, 563 U.S. at 62.

[134]  I note that, while Plaintiff avers a "practice of 'overcharging,' " there are not facts demonstrating a pattern or custom of same. Plaintiff is therefore limited to the "single incident" failure to train theory.

[135]  ECF No. 32, at 7.

violations.[136]  In explaining this theory of failure to train liability in *City of Canton, Ohio v. Harris*, the Supreme Court offered the following example:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, (citation omitted), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.[137]

Liability therefore "depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.' "[138]  Finally, the Third Circuit, in *Thomas v. Cumberland County*, stated that following concerning causation:

> In analyzing causation, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. Rather, the causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect.[139]

While this theory of establishing *Monell* liability undoubtedly proves the most tenuous, I nevertheless conclude that, at this early stage of litigation, Plaintiff

---

[136] *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989); *see also Thomas v. Cumberland Cty.*, 749 F.3d 217, 223–25 (3d Cir. 2014).

[137] 489 U.S. 378, 390 n. 10 (1989).

[138] *Thomas*, 749 F.3d at 223–24 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

[139] *Id.* at 226 (internal citations and quotations omitted).

BC has met the plausibility requirements of *Twombly-Iqbal*. In *Connick v. Thompson*, the Supreme Court held that *Monell* liability may flow from a municipality's failure to train in "narrow circumstances" involving a single incident such as "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force."[140] In this case, Plaintiff BC has similarly based *Monell* liability, at least in part, on a lack of training in the proper use of lethal weapons.[141] At this stage of litigation and without the benefit of factual discovery, this allegation, together with those concerning the excessive use of force against Plaintiff BC, state a plausible claim for relief against Defendants Van Loan and the Town of Bloomsburg.[142]

Defendants Roger Van Loan and Town of Bloomsburg's Motion to Dismiss Counts VI and VII is therefore denied.

---

[140] *Connick*, 563 U.S. at 63 (citing *Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989)).

[141] Compl. (ECF No. 26) ¶ 118, at 21.

[142] *See Blair v. City of Pittsburgh*, Civil Action No. 14-CV-1473, 2015 WL 4162400, at *4 (W.D.Pa. July 9, 2015)(Fischer, J.)("Plaintiff has stated a plausible claim for relief against the City under *Monell,* i.e., that the lack of a policy governing the appropriate use of firearms by City Police Officers and/or the failure of the Chiefs of Police to enforce any existing policies and train the Police Officers regarding same was the moving force behind his constitutional injuries."). *See also Watson v. Witmer*, 183 F.Supp.3d 607, 615 (M.D.Pa. Apr. 25, 2016)(Conner, C.J.)(denying motion to dismiss where plaintiff alleged that the failure to train police officers and [parole] officers regarding the proper identification of suspects and failure to take action when presented with...exculpatory evidence was so obvious that a plausible claim of *Monell* liability existed)(collecting cases).

(e)    <u>Counts VIII & XI: Bruce and Kim Campbell's Section 1983 Loss of Consortium Claim Against Charles Balon and Bloomsburg</u>

In Counts VIII and XI, Plaintiffs BC and KC each bring a loss of consortium claim under Section 1983 based on the alleged violation of their spouse's civil rights. These claims, however, fail as a matter of law. I specifically note that:

> The purpose of section 1983 claims, as intended by Congress, was to provide a federal forum to remedy deprivations of civil rights. (citation omitted). It was intended to create 'a species of tort liability' in favor of persons deprived of *federally secured rights,* (citation omitted)*,* not to provide a mechanism for vindication of state torts derived from another's section 1983 claim." (citation omitted). Thus, "although there is limited case law on this issue, the federal courts almost unanimously have dismissed loss of consortium claims based upon federal civil rights violations." (citation omitted).[143]

I will follow this clear trend.[144] Furthermore, while Plaintiffs allude to their loss of consortium claims being based on separately brought state tort claims,[145] I note that their complaint bases these consortium claims solely on Section 1983. "Although a court on a motion to dismiss ordinarily 'must accept the allegations in the complaint as true,' it is not compelled to accept assertions in a brief without

---

[143] *Thomas v. Shutika*, Civil Action No. 12-CV-692, 2012 WL 4050005 (M.D.Pa. Aug. 24, 2012), *adopted by* 2012 WL 4050021 (M.D.Pa. Sept. 13, 2012)(Conner, J.).

[144] *See Quitmeyer v. Se. Pennsylvania Transp. Auth.*, 740 F.Supp. 363, 370 (E.D.Pa 1990); *Stallworth v. City of Cleveland*, 893 F.2d 830, 838 (6th Cir. 1990); *Walsh v. American Medical Response*, Civil Action No. 13-CV-2077, 2014 WL 2109946, at *8 (E.D.Cal. May 20, 2014), *adopted by* 2014 WL 2890838 (E.D.Cal. July 25, 2014).

[145] *See* ECF No. 32, at 9.

support in the pleadings."[146]  Plaintiffs' attempt to save their loss of consortium

claims is unavailing, and Counts VIII and XI are dismissed with prejudice.

> (f)     Count IX: Bruce Campbell's Section 1983 Conspiracy
>          Claim Against Defendants Charles Balon, Officer
>          Szkodny or Auchter, Marlene Butters, Jason Gregas, and
>          Capitol Bar and Grill

Defendants Balon, Szkodny, and Auchter next move to dismiss Plaintiff

BC's Section 1983 conspiracy claim for failure to allege a plausible claim for

relief.  Plaintiff, in turn, argues that plausibility has been met through the following

averments:

> 150.   Plaintiff BC further avers that Defendants Balon and Szkodny
>          are familiar with the Defendant Capitol and the owners
>          Defendant Butters and Berger and that there is strong
>          familiarity and relationship amongst the officers of the
>          Bloomsburg Police Department and the owners of said
>          Defendant Capitol and the establishment's management in
>          general in having provided police services and/or security to the
>          Defendant Capitol on prior occasions.

> 151.   Plaintiff BC avers that in light of the large laceration suffered
>          by Defendant Berger on his forehead, and despite what is
>          reflected in the video, Defendants Balon and Szkodny agreed
>          with Defendants Butters and Gregas to substitute their
>          judgment in creating a scenario that is reflected in the Affidavit
>          of Probable Cause that was ultimately prepared by Defendant
>          Balon to which he swore was the truth.

> 152.   Plaintiff BC avers that the Defendants Balon and Szkodny
>          conspired with the Defendants Butters and Gregas in creating a

---

[146] *Chavarriga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015)(quoting Morrow
v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013)).

scenario that would assist the Defendant Berger who, because of his injuries, would then attempt to seek compensation in any civil action to be pursued against the Plaintiff BC.

153. Plaintiff BC, therefore, avers that the private actors Defendants Butters, Gregas and Capitol, as their employer, conspired with the state actors Balon and Szkodny in preparing and creating a scenario of criminal charges in order to not only harm and damage the Plaintiff BC but, also, to assist the Defendant Berger, in order to pursue compensation for his injury suffered in the melee.[147]

In order to establish a conspiracy claim against the Defendants pursuant to Section 1983, plaintiff must allege "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right."[148] At the motion to dismiss stage, the Third Circuit has held that *Twombly-Iqbal* requires that "a plaintiff must assert facts from which a conspiratorial agreement can be inferred."[149] "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'"[150] Similarly insufficient are conspiracy claims based solely on "suspicion and speculation."[151]

---

[147] Compl. (ECF No. 26) ¶¶ 150–153, at 28.

[148] *Williams v. Fedor*, 69 F.Supp.2d 649, 665 (M.D.Pa. 1999) (Vanaskie, J.), *aff'd* 211 F.3d 1263 (3d Cir. 2000).

[149] *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

[150] *Id.* (quoting *Twombly*, 550 U.S. at 556).

[151] *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

In the instant matter, Plaintiff BC's complaint fails to allege factual content from which a plausible conspiratorial agreement can be inferred. Specifically, although Plaintiff BC avers that (1) he was charged in light of the large laceration suffered by Defendant Berger; (2) there is a familiarity and relationship amongst the officers of the Bloomsburg Police Department and the owners of Defendant Capitol; and (3) Defendants Balon and Szkodny conspired with the Defendants Butters and Gregas in creating a scenario that would assist the Defendant Berger in a civil action against Plaintiff BC, there are no actual *factual* averments from which a conspiratorial agreement can be inferred. Rather, Plaintiff BC intimates that the Court should simply accept the "suspicion and speculation" upon which his conspiracy claim rests.[152] This claim will therefore be dismissed. However, because the Court cannot say amendment would be futile, leave to do so is granted.

      (g)      Counts X & XII: Kim Campbell's Section 1983 Claim Against Charles Balon & Monell Claim Against the Town of Bloomsburg

In Counts X and XII, Plaintiff KC attempts to—as Defendants state—"stretch the fabric of Section 1983" by asserting her own claims against Defendant Balon and the Town of Bloomsburg based on the actions taken against her husband. Defendants Balon and the Town of Bloomsburg respond that this Court

---

[152] *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009)("[T]he rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.").

should dismiss Plaintiff KC's claims against them as she is not a true party in interest. I agree.

In *Ballas v. City of Reading*, the Honorable John R. Padova of the Eastern District of Pennsylvania was presented with a procedurally analogous scenario in which the husband of a woman alleging retaliation and wrongful termination under Section 1983 averred that his First Amendment rights were also violated in retaliation for his wife's speech.[153] Judge Padova dismissed this claim by concluding that the husband lacked standing to assert a violation of section 1983 based on the deprivation of his First Amendment rights because the defendants' alleged actions were directed against his wife, not him.[154] He further reasoned that:

> Section 1983 permits suit for the abridgment only of one's own constitutional rights. *See e.g. Berry v. City of Muskogee,* 900 F.2d 1489, 1506 (10th Cir. 1990). Lessig lacks standing to sue based on action taken against his wife, except through some derivative theory of liability like loss of consortium. Claims for loss of consortium, however, are not cognizable under section 1983. *See Berry,* 900 F.2d at 1506–07 (plaintiffs not entitled to loss of consortium damages because section 1983 creates a federal remedy only for the party injured); *Stallworth v. City of Cleveland,* 893 F.2d 830, 838 (6th Cir. 1990) (dismissing husband's request for recovery for loss of consortium under section 1983 claim because the wife, rather than her husband, was the one who had suffered a deprivation of her civil rights); *Quitmeyer v. Southeastern Pa. Trans. Auth.,* 740 F.Supp. 363, 370 (E.D.Pa. 1990) (holding no authority to consider a loss of

---

[153] *Ballas v. City of Reading*, Civil Action No. 00-CV-2943, 2001 WL 73737, at *7 (E.D.Pa. Jan. 25, 2001).

[154] *Id.*

consortium claim deriving from a claim of injury by a spouse brought pursuant to 42 U.S.C. § 1983).[155]

Like the Plaintiff husband in *Ballas*, Plaintiff KC has similarly failed to allege actions taken against her specifically by Defendant Balon or the Town of Bloomsburg. As such, it is the Court's determination that she lacks standing to bring constitutional claims against these defendants. Because no amendment could cure this failure as a matter of law, dismissal of Counts X and XII is therefore with prejudice.[156]

### (h) Bruce Campbell's Request for Punitive Damages

Defendants next request that Plaintiffs' request for punitive damages be dismissed (1) against the Town of Bloomsburg because of its status as a government entity, and (2) against all remaining Bloomsburg defendants for failure to allege facts rising to the level of callousness or reckless indifference. "Punitive damages in [Section] 1983 cases are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others."[157] Punitive damages, while not recoverable against governmental employees in their official capacities,[158] are available against governmental

---

[155] *Id.*

[156] *Accord Louder v. Lower Saucon Tp.*, Civil Action No. 14-CV-3860, 2015 WL 1954078, at *3–4 (E.D.Pa. Apr. 29, 2015).

[157] *Keenan v. City of Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992).

[158] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

employees acting in their individual capacities.[159]  A plaintiff may be entitled to punitive damages under Section 1983 when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[160]

First, as a preliminary matter, I note that parties appear to be in agreement that punitive damages cannot and have not been alleged against the Town of Bloomsburg.[161]  Second, I find that, at this preliminary stage of litigation, the Court credits as true Plaintiff's averments concerning Defendant Balon's falsification of the "Affidavit of Probable Cause," and found, as plausible, Plaintiff BC's claim excessive use of force against Defendant Officers Auchter or Szkodny.  If the allegations asserted are proven to be true throughout the course of litigation, they may satisfy the above standard for imposing punitive damages against the remaining defendants.[162]  As such, Plaintiff BC's request for punitive damages will not be dismissed at this juncture.

---

[159] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 254 (1981); *Rivera v. James*, Civil Action No. 03-CV-4631, 2004 WL 1784351, at *1 n.1 (E.D. Pa. 2004) (citation omitted) (explaining that punitive damages in Section 1983 cases are available where defendants have acted with a "reckless or callous disregard of, or indifference to, the rights or safety of others").

[160] *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

[161] *See* ECF No. 31, at 23-24; ECF No. 32, at 14.

[162] *Fleckenstein v. Crawford*, Civil Action No. 14-CV-1085, 2015 WL 5829758, at *8 (M.D.Pa. Oct. 1, 2015)(Kane, J.)([A]lthough Plaintiffs may not ultimately prevail on their punitive damages claim, the allegations in the amended complaint, taken as true, do not require the Court to dismiss the punitive damages claims at this time.").

## 2. State Law Claim

In Count XIII, Plaintiff BC lodges a civil assault claim under Pennsylvania law against Defendant Officers Auchter or Szkodny based on the allegation that they yelled at him to get on the ground as he walked away after being ejected from the bar and thereafter pointed a gun at him. Defendant Officers Auchter or Szkodny, in turn, ask that this claim lodged against them be dismissed. Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."[163] In making a lawful arrest the police may use "such force as is necessary under the circumstances to effectuate the arrest."[164] Whether a police officer's conduct constitutes an assault and battery is therefore determined based on the reasonableness of the force, and so "[a] claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery."[165] Here, because I previously found that Plaintiff BC has adequately stated a claim for excessive force, it necessarily follows that Plaintiff BC has stated a state law civil

---

[163] *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994) (quoting *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (1950)).

[164] *Id.*

[165] *Garey v. Borough of Quakertown*, Civil Action No. 12-CV-799, 2012 WL 3562450, at *5 (E.D.Pa. Aug. 20, 2012)(Baylson, J.).

assault and battery claim against Officers Auchter or Szkodny.[166]  Therefore, this

claim will not be dismissed.

### B.    Capitol Defendant' Motions to Dismiss

In four separate motions to dismiss filed by Defendants John E. Berger, III

("Defendant Berger"), Marlene Butters ("Defendant Butters"), Jason Gregas

("Defendant Gregas"), and Defendant Chumley's Bar and Grille ("Defendant

Chumley"),[167] Capitol Defendants collectively request the following relief: (1)

dismissal of the punitive damages claim against Defendant Berger; (2) dismissal of

the false imprisonment claim against Defendants Berger and Chumley; (3)

dismissal of Plaintiff KC's claims for intentional infliction of emotional distress;

(4) dismissal of Counts XIV, XVII, and XIX as redundant; (5) dismissal of the

Section 1983 conspiracy claim;[168] and (6) dismissal of Defendant Chumley from

the action entirely as barred by the statute of limitations.

#### 1.    Dismissal of Defendant Chumley From the Action As Barred By the Statute of Limitations

---

[166] *See Boyden v. Tp. Of Upper Darby*, 5 F.Supp.3d 731, 744 (E.D.Pa. 2014); *Garey*, 2012 WL 3562450 at *5.

[167] Collectively, the Court will refer to these four (4) defendants as "Capitol Defendants."

[168] In Defendants Butters, Gregas, and Chumley's separately filed Motions to Dismiss, see ECF Nos. 37, 38, and 50, they ask the court to dismiss Count IX, or Section 1983 conspiracy, for failure to state a claim upon which relief can be granted. Having previously determined in Section III.A.1.(f) that this claim in its current form fails to rise above simple speculation and suspicion, I will grant these Motions in accordance with the above reasoning.  As noted above, Plaintiff BC is however granted leave to amend this claim within twenty-one (21) days of this Memorandum Opinion to correct noted deficiencies.

In its Motion to Dismiss, Defendant Chumley asks the Court to dismiss it from the action because all the claims lodged against it have a two year statute of limitations which expired prior to the filing of the Amended Complaint.[169]

While a statute of limitations defense generally may not be used in the context of a Rule 12(b)(6) dismissal, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."[170]  In Pennsylvania, the limitation period begins when the cause of action accrues—i.e. when the injury occurs.[171]  The "discovery rule," however, tolls the statute of limitations period when a plaintiff is unable, "despite the exercise of due diligence," to know of the injury or its cause.[172]  The tolling continues until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."[173]

---

[169]  *See* 42 Pa. C.S. § 5524 (1)(noting that assault, battery, and false imprisonment carry a two year statute of limitations); 42 Pa. C.S. § 5524 (1)(7)(noting that intentional infliction of emotional distress carries a two year statute of limitations); 42 Pa.C.S. § 5524(2)(noting that negligence carries a two year statute of limitations).

[170]  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

[171]  *Calle v. York Hosp.*, 232 F.Supp.2d 353, 357 (M.D.Pa. 2002)(Conner, J.)(citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (1983)).

[172]  *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3rd Cir. 2006) (citing Pocono Int'l Raceway, Inc., 468 A.2d 468, 471 (1983)).

[173]  *Mest*, 449 F.3d at 510 (citing *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3rd Cir. 2003)).

Here, Plaintiff BC does not and cannot, based on the dramatic events underlying this complaint, allege that he was unaware that an injury occurred as result of the assault and battery, false imprisonment, and negligence suffered at the hands of Defendant Chumley. Because the applicable two year statute of limitations began on May 9, 2014, the time allotted to file such a claim expired on May 10, 2016—more than two months prior to the filing of the operative complaint. Plaintiff BC nevertheless argues that amendment should be allowed because this added claim is simple an "amplification of what has already occurred." I agree, but for reasons in accord with Federal Rule of Civil Procedure 15.[174]

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."[175] If a litigant wishes to add a party after the statute of limitations on its claim has run, "'the essence of Rule 15(a) is not reached,' unless the Court finds that the requirements of ... 15(c), which governs

---

[174] *Singletary v. Pennsylvania Dept. of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001)("Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint."). *See also Godfrey v. Upland Borough*, -- F.Supp.3d--, 2017 WL 1196635, at *7 (E.D.Pa. Mar. 30, 2017)("As the Third Circuit has explained . . . the question of relation back is procedural and therefore properly analyzed according to federal practice.")(quoting *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014 n. 5 (3d Cir. 1995)).

[175] Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

the relation back of amendments, have been satisfied."[176]  Rule 15(c) provides, in

pertinent part:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> . . .
>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[177]

The Third Circuit has therefore noted the following three prerequisites for

operation of the relation back doctrine:

> (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action

---

[176] *Wine v. EMSA Ltd. P'ship*, 167 F.R.D. 34, 36 (E.D.Pa. 1996) (quoting *Cruz v. City of Camden*, 898 F.Supp. 1100, 1115 (D.N.J. 1995)).

[177] Fed. R. Civ. P. 15(c).

would have been brought against the party but for a mistake concerning its identity.[178]

In the instant matter, I find that Plaintiffs' addition of Defendant Chumley in their Amended Complaint satisfies the above three requirements. First, because the state law claims against Defendant Chumley arise from the same general melee as those against the other Capitol Defendants, I find as a preliminary matter that the first of the above three prerequisites is satisfied. Second, the notice requirements are satisfied concerning Defendant Chumley under the "shared attorney" method of imputing notice. "The 'shared attorney' method of imputing Rule 15(c)(3) notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action."[179] The relevant inquiry under this method is therefore whether notice of the institution of this action can be imputed to the Defendant Chumley within the relevant 120 day period, by virtue of representation it shared with Defendants originally named in the lawsuit.

Here, the facts indicate that, following the filing of the original Complaint on May 5, 2016, Gary L. Weber, Esquire entered his appearance on behalf of the

---

[178] *Arthur v. Maersk*, 434 F.3d 196, 203 (3d Cir. 2006)(citing Fed. R. Civ. P. 15(c)).

[179] *Singletary*, 266 F.3d at 195.

original Defendants Berger, Butters, and Gregas on June 10, 2016.[180] After an Amended Complaint was filed on August 2, 2016, Mr. Weber filed a Waiver of Service of Summons on behalf of newly added Defendant Chumley.[181] He has since filed Motions to Dismiss this Amended Complaint on behalf of both the original defendants and Defendant Chumley.[182] Therefore, because the original waiver of service in this case demonstrates that service was made within the 120 day period under Federal Rule 4(m) and Mr. Weber (the shared attorney) entered his appearance on behalf of the original Defendants well before that period had run, Defendant Chumley received notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits. Notice may therefore be imputed to Defendant Chumley.

The final prerequisite pursuant to Federal Rule of Civil Procedure 15(c)(3) is to ascertain whether the Defendant Chumley knew or should have known that, "but for a mistake concerning the identity of the proper party, the action would have been brought against the party."[183] In the first complaint filed in this Court, Capitol Bar and Grill is named as a Defendant, along with alleged co-owners Defendants Berger and Butters, and manager Defendant Gregas. In the Amended

---

[180] *See* ECF No. 13.

[181] *See* ECF No. 49.

[182] ECF Nos. 36, 37, 38, & 50.

[183] Fed. R. Civ. P. 15(c)(3)(B).

Complaint, Plaintiffs added Defendant Chumley to this action as the alleged corporate owner of Capitol Bar and Grill.[184]  Taken together, these averments reveal that Defendant Chumley knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

Based upon basic principles of fairness and equity under the circumstances, I find that Plaintiff's amended complaint does not violate the statute of limitations as it relates to Defendant Chumley because the amendment relates back to the original, timely filed complaint pursuant to Federal Rule of Civil Procedure 15(c). Defendant Chumley's request that this Court dismiss it from this action on that basis is therefore denied.

2.     <u>Plaintiff BC's Request  for Punitive Damages Against Defendants Berger and Chumley in Counts XIV, XV, XVI</u>

In their motions to dismiss, Defendants Berger and Chumley ask the Court to dismiss Plaintiff BC's request for punitive damages encapsulated in Counts XIV (civil assault and battery against Capitol Bar and Grill and John Berger III), XV (civil assault and battery against Capitol Bar and Grill), and XVI (false imprisonment against Defendants  Berger and Capitol Bar and Grill).  Defendants

---

[184] *See Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977)("[A] plaintiff's lack of information regarding a particular defendant's identity is considered a "mistake" within the meaning of Rule 15(c)(3)(B).").

further this request by arguing that Plaintiff BC has pleaded no facts justifying and/or establishing the state of the mind of the involved actors.

Under Pennsylvania law, punitive damages are only available to compensate "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."[185]  Fundamentally, punitive damages are penal in nature; the objective is to punish a tortfeasor for his outrageous conduct and to deter him from similar conduct in the future.[186]  Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts, which permits punitive damages only for conduct that is "outrageous because of the defendant's evil motive or his reckless indifference to the rights of others."[187]  Accordingly, a punitive damages claim must be supported by sufficient evidence to establish: (1) that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed; and (2) that he acted or failed to act in conscious disregard of that risk.[188]

Here, Plaintiff BC has alleged two claims of civil assault and battery and false imprisonment against Defendants Capitol and Berger.  While the parties

---

[185] *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citing *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)).

[186] *See id.*; *see also SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991).

[187] *Feld*, 485 A.2d at 747 (1984) (quoting *Chambers v. Montgomery*, 192 A.2d 355 (1963); RESTATEMENT (SECOND) OF TORTS, § 908(2)).

[188] *See Feld*, 485 A.2d at 1097-98.

argue at length over whether the essential elements of these damages have been plead, the supporting allegations of these claims, taken as true at this stage of the proceeding, necessarily involve intentional conduct.[189]  Therefore, because this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery,[190] I will deny Defendants' Motions at this time to the extent they seek to strike Plaintiff's request for punitive damages.

3.    Plaintiff BC's Claim for False Imprisonment against Defendants Berger and Chumley

Defendants Berger and Chumley next ask the Court to dismiss the false imprisonment claim lodged against them in Count XVI.  Defendants specifically aver that this claim, not included in the original complaint filed on May 5, 2016, is barred by the statute of limitations of false imprisonment.  I agree.

While a statute of limitations defense generally may not be used in the context of a Rule 12(b)(6) dismissal, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative

---

[189]  *Renk*, 641 A.2d at 293 (quoting Cohen, 70 A.2d at 421)("[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."); *Brockington v. City of Philadelphia*, 354 F.Supp.2d 563, 571-72 (E.D.Pa. 2005)("For Brockington's false arrest and false imprisonment claim, the question is whether Shakoor "intentionally arrested  [a person] knowing that he lacked probable cause to do so.").

[190]  *See, e.g., Cerreta v. Red Roof Inns*, Civil Action No. 4:16-CV-0706, 2016 WL 4611689, at *3 (M.D.Pa. Sept. 6, 2016); *Cobb v. Nye*, Civil Action No. 14-CV-0865, 2014 WL 7067578 (M.D. Pa. Dec. 12, 2014).

defense clearly appears on the face of the pleading."[191] Under Pennsylvania law, the statute of limitations for a claim of false imprisonment[192] is two years.[193] In Pennsylvania, the limitation period begins when the cause of action accrues—i.e. when the injury occurs.[194] The "discovery rule," however, tolls the statute of limitations period when a plaintiff is unable, "despite the exercise of due diligence," to know of the injury or its cause.[195] The tolling continues until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."[196]

Again, Plaintiff BC does not and cannot, based on the dramatic events underlying this complaint, allege that he was unaware that an injury occurred as result of the false imprisonment suffered at the hands of Defendants Berger and Chumley. Because the applicable two year statute of limitations began on May 9, 2014, the time allotted to file such a claim expired on May 10, 2016—more than

---

[191] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

[192] Under Pennsylvania law, "[t]he elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." *Pope v. Rostraver*, Civil Action No. 06-CV-776115, at *3 (W.D.Pa. Mar. 9, 2007)(Hardiman, J.). "A private citizen who 'purports to act for the purpose of securing the administration of the law without actual legal justification,' (citation omitted), may well be liable for false imprisonment." *Id.* (quoting *Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971)).

[193] 42 Pa. C.S. § 5524(1).

[194] *Calle v. York Hosp.*, 232 F.Supp.2d 353, 357 (M.D.Pa. 2002)(Conner, J.)(citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (1983)).

[195] *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3rd Cir. 2006) (citing Pocono Int'l Raceway, Inc., 468 A.2d 468, 471 (1983)).

[196] *Mest*, 449 F.3d at 510 (citing *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3rd Cir. 2003)).

two months prior to the filing of the operative complaint. Plaintiff BC nevertheless argues that amendment should be allowed because this added claim is simple an "amplification of what has already occurred."

Although Plaintiff BC's allegation of this false imprisonment claim within the Amended Complaint is outside the governing statute of limitations period, this violation can again be cured if the amendment "relates back" to the original complaint, again in accordance with Federal Rule of Civil Procedure 15. This Rule again provides, in pertinent part:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> . . .
>
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[197]

---

[197] Fed. R. Civ. P. 15(c).

As stated previously, the Third Circuit has noted the following three prerequisites for operation of the relation back doctrine:

> (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity.[198]

Analysis of the factual underpinning of the false imprisonment claim suffered at the hands of Defendants Berger and Chumley reveals that it satisfies this test. When determining whether a newly asserted complaint "relates back" to the those of the original pleading, courts look for " 'a common core of operative facts in the two pleadings.' "[199] An amendment therefore "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."[200] In the instant matter, Plaintiff BC's false imprisonment claim against Defendants Berger and Chumley, while first asserted beyond the statute of limitations, is saved by the relation back doctrine. Specifically, I am satisfied that this claim arises from "a common core of operative facts" concerning the events of May 9, 2014 already alleged in Plaintiff

---

[198] *Arthur v. Maersk*, 434 F.3d 196, 203 (3d Cir. 2006)(citing Fed. R. Civ. P. 15(c)).

[199] *Glover v. F.D.I.C.*, 698 F.3d139, 145–46 (3d Cir.2012) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

[200] *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

BC's civil assault and battery charge against Defendants Berger and Chumley.[201]

Therefore, because the underlying factual allegations of the false imprisonment

claim differ in neither time nor type, I will deny Defendants Chumley and Berger's

Motion to Dismiss to the extent they seek dismissal of this claim.

    4.    <u>Plaintiff KC's Claim for Intentional Infliction of Emotional Distress</u>

Under Pennsylvania law, "[t]o state a claim for intentional infliction of

emotional distress, a plaintiff must plead that the defendant's conduct: (1) was

intentional or reckless; (2) was extreme and outrageous; (3) actually caused the

distress; and (4) caused distress that was severe."[202] "A plaintiff seeking to

establish intentional infliction of emotional distress must also support his claim

with competent medical evidence, because it is unwise and unnecessary to permit

recovery to be predicated on an inference based on the defendant's outrageousness

without expert medical confirmation that the plaintiff actually suffered the claimed

distress."[203]

---

[201] *See Wirt v. Bon-Ton Stores, Inc.*, 134 F.Supp.3d 852, 859 (M.D.Pa. 2015)(Jones, J.)(citing, *inter alia*, *Spicer v. Villanova Univ.*, Civil Action No. 06–CV–1411, 2006 WL 3486465, at *1–2 (E.D.Pa. Dec. 1, 2006) (holding that plaintiff's added claim for disability-based employment discrimination related back to her other claims of discrimination on the basis of race and sex because it arose from the same factual core as the original complaint).

[202] *Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[203] *Lawson v. Pennsylvania SPCA*, 124 F. Supp. 3d 394, 409 (E.D. Pa. 2015) (internal quotation marks omitted).

"In order to state a cognizable claim, the conduct must be so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society."[204] "Generally, the case must be one with respect to which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[205]

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[206] "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."[207] Thus, it has been said that "[t]here is no occasion for the law to intervene in every case where someone's feelings are hurt."[208] "Perceived unkindness has no remedy at law."[209]

Accordingly, a claim for intentional infliction of emotional distress must be dismissed where "[t]he defendants' alleged conduct is simply not sufficiently

---

[204] *Id.* (internal quotation marks omitted).

[205] *Robinson*, 246 F. Supp. 2d at 444 (internal quotation marks omitted).

[206] *Hunger v. Grand Cent. Sanitation*, 447 Pa. Super. Ct. 575, 584, 670 A.2d 173, 177 (1996).

[207] *Id.*

[208] *Id.*

[209] *Zaloga v. Borough of Moosic*, No. 3:10-CV-2604, 2015 WL 3755003, at *11 (M.D. Pa. June 16, 2015).

outrageous to sustain a claim of intentional infliction of emotional distress."[210] As such, "[w]ith regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery."[211]

While Plaintiffs have exhaustively detailed the incident in question, I am unconvinced that the scenario painted, even when viewed in the light most favorable, is "so extreme and outrageous" that recovery under this theory may be justified. Pennsylvania courts presented with the issue have deemed sufficiently outrageous conduct to include: (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease.[212]

Here, Plaintiff KC bases her claims for intentional infliction of emotional distress in Counts XVII and XVIII on a physical scuffle between Defendants

---

[210]  *See Goodson v. Kardashian*, 413 F. App'x 417, 418 (3d Cir. 2011).

[211]  *Johnson v. Caparelli*, 425 Pa. Super. Ct. 404, 412, 625 A.2d 668, 671 (1993). *See, e.g., Snyder v. Specialty Glass Products, Inc.*, 658 A.2d 366 (Pa. Super. Ct. 1995) (summary judgment granted in favor of defendant because plaintiff employee's suffering verbal abuse and demotion after arriving late to work was not outrageous as a matter of law); *Ruder v. Pequea Valley Sch. Dist.*, 790 F.Supp.2d 377, 398 (E.D. Pa. 2011) (motion to dismiss granted because defendant's failure to provide the plaintiff with medical leave and benefits, and its subsequent termination of the plaintiff, was not outrageous as a matter of law).

[212]  *Dull v. Manchester Twp. Police Dep't*, 604 F.Supp.2d 739, 756 (M.D.Pa. 2009)(Conner, J.)(citing *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

Berger and employees of Defendant Chumley and her husband. Essentially premised on witnessing a bar fight, I find, as a matter of law, that Plaintiff KC has failed to allege conduct so extreme and outrageous as to justify recovery.[213] In *Dorley v. South Fayette Township School District*, the Honorable Mark Hornak of the Western District of Pennsylvania dismissed an IIED claim in the context of high school sports and noted that "recognizing the IIED tort here would necessarily compel its application in the case of every battery."[214] I am compelled by similar reasoning to find that recognizing a claim for IIED in this circumstance would contradict the high standard required under Pennsylvania law, and open the floodgates of litigation under this claim. Therefore, given the futility of amendment in light of Plaintiff KC's exhaustive allegations concerning this count, I will dismiss this claim with prejudice.

5.  Plaintiffs BC and KC's Redundant Claims Against Defendant Capitol for Civil Assault and Battery, Intentional Infliction of Emotional Distress, and Negligence in Counts XV, XVIII, and XX.

Under Federal Rule of Civil Procedure 12(f), a court may strike, either *sua sponte* or by motion by a party, "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[215] The disposition

---

[213] *Id.*

[214] *Dorley v. South Fayette Tp. Sch. Dist.*, 129 F.Supp.3d 220, 247 (W.D.Pa. 2015)(Hornak, J.).

[215] Fed. R. Civ. P. 12(f).

of motions to strike portions of a complaint is addressed to discretion of district court.[216]  Such motions, however, are disfavored and "should be denied unless the allegations have no possible relation to the controversy, may cause prejudice to one of the parties, or confuse the issues."[217]  That discretion, however, should be exercised sparingly and only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party.[218]

In the instant matter, Defendants Berger and Chumley ask this Court not simply to strike redundant factual pleadings, but rather counts in their totality.  Specifically, Defendants Berger and Chumley ask this Court to strike Counts XIV (civil assault and battery), XVII (false imprisonment),[219] and XIX (negligence) to the extent they assert claims against Capitol Bar and Grill because those claims are redundant of those separately alleged in Counts XV, XVIII, and XX where Capitol Bar and Grill is accompanied by Defendant John Berger, III.  In response, Plaintiffs argue that this duplicative pleading is somehow necessary given Defendant Berger and Defendant Chumley's separate legal statuses.  That distinction is adequately recognized in Counts XV and XX where independent

---

[216]  *Von Bulow v. Von Bulow*, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987).

[217]  *Balon v. Enhanced Recovery Company, Inc.*, 316 F.R.D. 96, 98 (M.D.Pa. Sept. 15, 2016)(Nealon, J.).

[218]  *Ruby v. Davis Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001).

[219]  These claims for intentional infliction of emotional distress, brought by Plaintiff KC, are dismissed for legal insufficiency in accordance with the above reasoning.  I will therefore not analyze any possible redundancy with regard to these claims.

counts are alleged against Capitol Bar and Grill, and this Court strains to see how these claims are not redundant. Defendants Berger and Chumley, however, fail to demonstrate or argue prejudice from these claims. Therefore, in recognition that "Relief under 12(f) is generally disfavored" and will be denied unless the conjunction test of redundancy and prejudice is met,[220] this Court will at this time decline striking Capitol Bar and Grill as a defendant to Counts XIV and XIX.[221]

## IV. CONCLUSION

Based on the above reasoning, the Court makes the following dispositions:

1. Bloomsburg Defendant's Motion to Dismiss will be granted in part and denied in part.

2. Defendants Butters and Gregas' Motions to Dismiss will be granted.

3. Defendants Berger and Chumley's Motions to Dismiss will be granted in part and denied in part.

Plaintiff BC is granted leave to file an Amended Complaint within twenty-one (21) days re-asserting the dismissed excessive force claim under Section 1983 against

---

[220] *Dann v. Lincoln Nat. Corp.*, 274 F.R.D. 139, 142–43 (E.D.Pa. 2011).

[221] *Sluberski v. Lakeside Manor Home for Adults*, Civil Action No. 96-CV-2689, 1996 WL 1088902, at *4 (E.D.N.Y. Nov. 19, 1996)(denying a motion to strike for lack of prejudice to defendants but noting that "defendants' concern that plaintiff not receive double or triple compensation for the same predicate acts.").

Defendant Balon, and the dismissed civil conspiracy claim under Section 1983

against Defendants Balon, Berger, Butters, and Gregas.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge